UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
CHAZ ZACHARY,                                :
                Plaintiff,        :
                                             :
v.                                           :       **OPINION AND ORDER**
                                             :
CITY OF NEWBURGH, OFFICER ROMAN              :       13 CV 5737 (VB)
SCUADRONI, CARLOS MENDEZ, ANDRES             :
ARRESTIN, DANIEL VOLPE, WILLIAM              :
HINSPETER, WILLIAM LAHAR, SGT.               :
ANDERSON, KEVIN LAHAR, JAKE KIRBY,           :
HOWARD LADLEE,                               :
                Defendants.       :
--------------------------------------------------------------x

Briccetti, J.:

       Plaintiff Chaz Zachary, who is proceeding pro se, brings this civil rights action pursuant

to 42 U.S.C. § 1983 arising from events during and after his arrest on May 9, 2013, in the City of

Newburgh.  Plaintiff brings an excessive force claim under the Fourth Amendment and a

procedural due process claim under the Fourteenth Amendment against two Orange County

Sheriff's Office ("OCSO") deputy sheriffs and eight Newburgh Police Department ("NPD")

officers.

       Defendants Deputy Sheriff Daniel Volpe and Deputy Sheriff Jake Kirby ("County

Defendants") move for summary judgment as to both claims.  Defendants Officer Roman

Scuadroni, Officer Carlos Mendez, Officer Andres Arrestin, Officer William Hinspeter, Officer

William Lahar, Sergeant Anderson, Officer Kevin Lahar, and Officer Howard Ladlee

("Newburgh Defendants") move for summary judgment as to the procedural due process claim

and as to the excessive force claim arising from an altercation in the NPD booking room.[1]

---

[1]     Plaintiff's excessive force claim arises from two separate incidents – his arrest and later
in the NPD booking room.  The Newburgh defendants do not seek summary judgment

For the following reasons, defendants' motions are DENIED as to plaintiff's excessive force claim and GRANTED as to plaintiff's procedural due process claim.

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

## BACKGROUND

The parties have submitted briefs, statements of facts, declarations with supporting exhibits, and video evidence,[2] which reflect the following factual background.

On May 9, 2013, County Defendants were assigned to work on an "Operation Impact" patrol, which was a joint operation between the OCSO and the NPD targeting quality-of-life crimes.  NPD Officers Roman Scuadroni, William Hinspeter, Carlos Mendez, William Lahar, and Kevin Lahar were also assigned to Operation Impact.

I.    Plaintiff's Arrest

At approximately 6:25 p.m. on May 9, 2013, Officer Scuadroni received a radio transmission identifying an individual with an open container.  Officer Scuadroni drove to the reported location, exited his vehicle, and approached plaintiff.  Plaintiff fled.  Officer Scuadroni pursued plaintiff on foot and sent a radio transmission informing other officers of the pursuit.  County Defendants and Officers Mendez and Hinspeter received Officer Scuadroni's radio transmission and drove to his location.  Upon their arrival, County Defendants witnessed Officer Scuadroni struggling to handcuff plaintiff.

The parties dispute what happened during the arrest and which officers were involved in subduing plaintiff.  Plaintiff contends "numerous officer[]s arrived and began to assault" him,

---

dismissing plaintiff's excessive force claim as it relates to the arrest itself, but only as it relates to the incidents in the booking room.

[2]    Defendants submitted video footage recorded by six security cameras within the NPD headquarters.  (Exhibit E to the Declaration of Kellie E. Lagitch, Esq., hereinafter "Ex. E").  None of the video footage has audio.

and further contends "officers kicked [him] while [he] was down and handcuffed." (Zachary Aff. ¶ 1).[3] Plaintiff states he was on his chest when he was kicked in his ribs and legs. Plaintiff does not know who kicked him, but asserts Officer Mendez stepped on the back of his head. It took between thirty seconds and one minute for Deputy Volpe and Officer Mendez to gain control of plaintiff and place him in handcuffs. Deputy Kirby contends he did not help subdue or handcuff plaintiff, but did search plaintiff after he was handcuffed. Deputy Kirby maintains he "never observed anyone kick plaintiff or put their feet on his head or back as he claims." (Kirby Aff. ¶ 9). Plaintiff admits Deputy Volpe did not punch, kick, or knee him during his arrest.

II.     NPD Booking Room Incident

NPD officers arrived at the NPD headquarters with plaintiff at approximately 6:30 p.m. County Defendants arrived shortly thereafter. Non-defendant officers escorted plaintiff into the booking room. Deputy Volpe then escorted plaintiff, who was handcuffed, to the strip search room to conduct a "pat frisk."[4] (Volpe Aff. ¶ 11). During the pat frisk, plaintiff asked Deputy Volpe if Deputy Volpe was the officer that pursued him on foot prior to his arrest. Deputy Volpe responded he was not. Upon completing the pat frisk, Deputy Volpe escorted plaintiff out of the strip search room to a bench in the booking room.

A.     Altercation with Officer Scuadroni

At approximately 6:38 p.m., Officer Scuadroni escorted plaintiff back to the strip search room to conduct a full strip search because officers recovered drugs from plaintiff during his

---

[3]     Plaintiff submitted an affidavit as a part of his opposition to defendants' motions. (Doc. #187 at 14-18).

[4]     The strip search room is located within the booking room. It has one entrance and does not have a door. Two of the six surveillance cameras in the booking room have sightlines into the strip search room, but the space to the left of the entrance in the strip search room is almost entirely out of view of the cameras. Officer Hinspeter explained in his affidavit that the visual obstruction is an intentional measure to provide privacy to those undergoing strip searches.

arrest.  Plaintiff remained handcuffed.  As they were walking to the strip search room, plaintiff asked Officer Scuadroni if he was the officer that pursued him on foot prior to his arrest.  Officer Scuadroni responded he was.

Once inside the strip search room, Officer Scuadroni faced plaintiff towards the wall to the left of the room's entrance.  (Ex. E, Booking 1, at 6:38:48).[5]  Officer Scuadroni stood just behind plaintiff, facing his back.  Officer Scuadroni then removed plaintiff's handcuffs.  About ten seconds after Officer Scuadroni positioned plaintiff in the strip search room, Deputy Volpe entered the strip search room and stood behind Officer Scuadroni.

The parties dispute what happened immediately after Officer Scuadroni removed plaintiff's handcuffs.  Plaintiff contends Officer Scuadroni bent plaintiff's arm and grabbed plaintiff's throat.  Plaintiff asserts he then pushed Officer Scuadroni away, and Officer Scuadroni swung at plaintiff before plaintiff swung back.  Plaintiff denies striking Officer Scuadroni.

Officer Scuadroni contends he simply removed plaintiff's handcuffs and did not twist plaintiff's arm or grab plaintiff's throat.  Officer Scuadroni maintains plaintiff turned and struck him as soon as plaintiff's handcuffs were removed, opening a laceration on Officer Scuadroni's scalp.  Although plaintiff says he did not strike Officer Scuadroni, Officer Scuadroni was taken to the hospital and received three staples to close a wound to his head.

The surveillance video does not conclusively show what happened after Officer Scuadroni removed plaintiff's handcuffs because plaintiff was standing in the area of the strip search room that is obstructed from the cameras' sightlines.  During the fourteen seconds between Officer Scuadroni positioning plaintiff in the strip search room and plaintiff striking Officer Scuadroni, the surveillance video does not clearly show Officer Scuadroni's arms for

---

[5]     The Court adopts the nomenclature supplied in Exhibit E to identify each camera.

approximately seven seconds, including the four seconds immediately preceding the altercation. However, it shows Officer Scuadroni's legs and upper body remained stationary during that time.  (Ex. E, Booking 1 & Booking 2, at 6:38:54-6:38:57, 6:38:59-6:39:02).

        B.      <u>The Melee While Plaintiff was Unrestrained</u>

       The parties also dispute what happened next.  Plaintiff contends Deputy Volpe swung at him first before he swung back at Deputy Volpe.  Deputy Volpe argues he struck plaintiff in self-defense after plaintiff swung at him unprovoked.  The parties agree Deputy Volpe struck plaintiff twice.

       The surveillance video shows that approximately one second after Deputy Volpe positioned himself behind Officer Scuadroni, Officer Scuadroni quickly bent down to his right. (Ex. E, Booking 1, at 6:39:03).  Deputy Volpe, facing towards plaintiff, lifted his arms up as if to cover his face and stepped backwards, away from plaintiff.  Less than one second later, plaintiff, no longer handcuffed, turned around to face Deputy Volpe with his fists clenched and his arms extended towards them.  (<u>Id</u>. at 6:39:04).  Within the same second, Deputy Volpe swung his closed left fist towards plaintiff's upper chest, and plaintiff swung his closed left fist towards Deputy Volpe's head.  Plaintiff then swung his right arm towards Deputy Volpe's head.  Then Officer Scuadroni grabbed plaintiff's torso and pushed him against the back wall of the strip search room as Deputy Volpe swung his right arm at plaintiff's head, hitting him with his closed fist.  (<u>Id</u>. at 6:39:06).

       Seconds later, Officer Mendez, Officer Arrestin, Officer Hinspeter, Deputy Kirby, and a non-defendant officer rushed towards the strip search room.  Plaintiff contends Officer "Mendez tried to knee [him] against a wall" (Zachary Dep. Tr. at 84), and one officer "was swinging a knife" or "something silver" at him.  (<u>Id</u>. at 85).  No knife is visible in the surveillance video.

Defendants contend the officers were merely attempting to secure plaintiff and gain his compliance after he had struck Officer Scuadroni.

The surveillance video shows that Officer Mendez and the officer not named as a defendant entered the strip search room, while Officer Hinspeter discharged pepper spray towards plaintiff's face from outside the room's entrance.  (Ex. E, Booking 1, at 6:39:06).  For about five seconds, plaintiff was obscured from the surveillance video both by the wall of the strip search room and by the presence of officers in and around the entrance to the room.

C.      Subduing Plaintiff

After the five seconds in which plaintiff was not visible in the surveillance video, plaintiff crawled underneath the officers to exit the strip search room into the booking room.  (Ex. E, Booking 1, at 6:39:11).  Officer Hinspeter pointed his pepper spray in plaintiff's direction, but did not continue to spray.

After plaintiff had crawled for approximately four seconds, Deputy Kirby stepped on plaintiff's right hand or wrist, and Officer Mendez stepped on plaintiff's left hand or wrist.  (Ex. E, Booking 2, at 6:39:16).  Plaintiff contends Deputy Kirby and Officer Mendez stepped on his wrists "without cause," (Zachary Aff. ¶ 3), while they contend they placed their feet on plaintiff's wrists to regain control of plaintiff.  Both Deputy Kirby and Officer Mendez removed their feet three seconds later when Officer Arrestin tased plaintiff in the back.  (Ex. E, Booking 1, at 6:39:19).

After the five-second taser cycle was complete, plaintiff lay face-down on the ground and placed his hands behind his head.  (Ex. E, Booking 1, at 6:39:23).  Deputy Volpe took plaintiff's right hand and placed it behind plaintiff's back.  (Id. at 6:39:31).  Officer Mendez placed handcuffs on plaintiff's left hand and pulled his left arm backwards before placing it behind plaintiff's back.  (Id. at 6:39:33).  Officer Hinspeter placed his right knee on plaintiff's upper

back and neck while Deputy Volpe and Officer Mendez handcuffed plaintiff.  (Id. at 6:39:30-6:39:47).  Officer Hinspeter then removed his knee from plaintiff, and Officers Mendez and Hinspeter lifted plaintiff onto his feet and took him back into the strip search room.  (Id. at 6:39:48-6:39:53).  Approximately three minutes later, Officer Ladlee placed plaintiff in shackles while plaintiff lay on the floor.  (Ex. E, Booking 2, at 6:43:04).

      D.    <u>After Plaintiff was Subdued</u>

      The parties also dispute what occurred after plaintiff was shackled in the strip search room for approximately twenty-one minutes.

      Plaintiff claims (i) Officer Arrestin stomped plaintiff's throat and head, and placed a taser under his chin, (ii) he lost consciousness, (iii) an officer whose identity plaintiff cannot recall placed a knife under his throat and threatened to stab him, (iv) Sergeant Anderson stomped on his legs and shackles, and (v) Officer William Lahar yanked the taser prongs from his back.

      Defendants dispute plaintiff's account.  Officer Arrestin admits he had a taser in his hand, but did not use it while in the strip search room with plaintiff.  Sergeant Anderson denies having any physical contact with plaintiff.  Officer William Lahar denies removing taser prongs from plaintiff's back, and asserts that the taser prongs were already out of plaintiff's back when he entered the strip search room.  Officer Arrestin attests that the taser prongs fell out of plaintiff's back prior to his return to the strip search room because someone had stepped on the taser wires.

      The surveillance video is inconclusive.  It shows that Officers Mendez and Hinspeter placed plaintiff on the ground to the left of the room's entrance, where he lay down with his head facing away from the entrance.  (See Ex. E, Booking 2, at 6:42:44-6:43:45, 6:48:38-6:52:30).  However, the surveillance video does not clearly capture plaintiff for approximately twenty-one minutes while he was in the strip search room.  During that time, Officer Arrestin, Sergeant

Anderson, Officer William Lahar, and Officer Hinspeter entered the strip search room, but the surveillance video does not depict what defendants were doing in the strip search room.

At approximately 6:52 p.m., plaintiff stood up, and officers positioned him to face towards the wall.  Between approximately 6:52 p.m. and 7:00 p.m., Officers Kevin and William Lahar conducted a strip search of plaintiff.  At approximately 7:01 p.m., Officer William Lahar escorted plaintiff from the strip search room and seated him on a bench in the booking room. Plaintiff asserts he lost consciousness while in the booking room.  Plaintiff did not lose consciousness in the booking room prior to 7:15 p.m., when the surveillance video ends.

III.   Plaintiff's Hospital Visit

Later that evening, Officer Mendez transported plaintiff to St. Luke's Hospital in Newburgh.  Plaintiff arrived at the emergency room at approximately 9:17 p.m.

The hospital medical records show plaintiff complained of pain in his left elbow, left wrist, chest, and ribs.[6]  Plaintiff's medical report indicates he had mild swelling of his left wrist at the handcuff site and redness on his left elbow, but reports his left elbow was "atraumatic with slightly red," meaning the elbow did not show signs of serious injury.  (Ex. G at 10).  The medical report also indicates plaintiff's head was "normocephalic" and "atraumatic."  (Id.). Plaintiff's X-ray of his wrist and elbow was negative for injuries.  Plaintiff was instructed to take Tylenol or ibuprofen for his pain.

IV.   Criminal Conviction

As a result of these incidents on May 9, 2013, plaintiff was charged with (i) assault in the second degree, (ii) attempted assault in the third degree, (iii) possession of marijuana, (iv)

---

[6]      Plaintiff's medical records from St. Luke's Cornwall Hospital are Exhibit G to the Declaration of Kellie E. Lagitch, Esq., hereinafter referred to as "Ex. G."  (Doc. #172).

tampering with physical evidence, (v) resisting arrest, and (vi) criminal possession of a controlled substance in the seventh degree.  Following a jury trial in January 2014 in Orange County Court, plaintiff was convicted on all charges.  Plaintiff's appeal of his conviction is pending.

V.   <u>Procedural History</u>

Plaintiff filed his initial complaint on August 13, 2013 (Doc. #2), and filed an amended complaint on December 19, 2013, which included an Eighth Amendment claim, a false arrest claim, a malicious prosecution claim, Fourteenth Amendment procedural and substantive due process claims, an excessive force claim, and a municipal liability claim against the City of Newburgh.  (Doc. #18).  Plaintiff also sought a declaratory judgment and injunctive relief barring the City of Newburgh from arresting him in the future.

Newburgh Defendants moved to dismiss plaintiff's amended complaint in part on January 9, 2014.  (Doc. #19).  Plaintiff voluntarily withdrew his Eighth Amendment claim on February 19, 2014 (Doc. #34), and his false arrest and malicious prosecution claims on March 12, 2014.  (Doc. #46).

On April 2, 2014, the Court dismissed plaintiff's request for a declaratory judgment and injunctive relief for lack of subject matter jurisdiction, and dismissed plaintiff's substantive due process and municipal liability claims for failure to state a claim.  (Doc. #47).  Newburgh Defendants answered plaintiff's amended complaint on July 11, 2014 (Doc. #63), and County Defendants answered plaintiff's amended complaint on August 13, 2014.  (Doc #70).

Following discovery, Newburgh Defendants and County Defendants moved for summary judgment.  (Doc. ##156, 171).

**DISCUSSION**

I.      Legal Standard

The Court must grant a motion for summary judgment if the pleadings, discovery

materials before the Court, and any affidavits show there is no genuine issue as to any material

fact and it is clear the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P.

56(c); Celotex Corp v. Catrett, 477 U.S. 317, 322 (1986).

A fact is material when it "might affect the outcome of the suit under the governing

law. . . .  Factual disputes that are irrelevant or unnecessary" are not material and thus cannot

preclude summary judgment.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

A dispute regarding a material fact is genuine if there is sufficient evidence upon which a

reasonable jury could return a verdict for the non-moving party.  See id.  The Court "is not to

resolve disputed issues of fact but to assess whether there are any factual issues to be tried."

Wilson v. Nw. Mut. Ins. Co., 625 F.3d 54, 60 (2d Cir. 2010) (citation omitted).  It is the moving

party's burden to establish the absence of any genuine issue of material fact.  Zalaski v. City of

Bridgeport Police Dep't, 613 F.3d 336, 340 (2d Cir. 2010).

If the non-moving party has failed to make a sufficient showing on an essential element

of his case with respect to which he has the burden of proof, then summary judgment is

appropriate.  Celotex Corp. v. Catrett, 477 U.S. at 323.  If the non-moving party submits

evidence that is "merely colorable," summary judgment may be granted.  Anderson v. Liberty

Lobby, Inc., 477 U.S. at 249-50.  The non-moving party "must do more than simply show that

there is some metaphysical doubt as to the material facts, and may not rely on conclusory

allegations or unsubstantiated speculation."  Brown v. Eli Lilly & Co., 654 F.3d 347, 358 (2d

Cir. 2011) (internal citations omitted).  The mere existence of a scintilla of evidence in support of

10

the non-moving party's position is likewise insufficient; there must be evidence on which the jury could reasonably find for him.  Dawson v. County of Westchester, 373 F.3d 265, 272 (2d Cir. 2004).

On summary judgment, the Court resolves all ambiguities and draws all permissible factual inferences in favor of the non-moving party.  Nagle v. Marron, 663 F.3d 100, 105 (2d Cir. 2011).  If there is any evidence from which a reasonable inference could be drawn in favor of the opposing party on the issue on which summary judgment is sought, summary judgment is improper.  See Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc., 391 F.3d 77, 83 (2d Cir. 2004).

While "it is undoubtedly the duty of district courts not to weigh the credibility of the parties at the summary judgment stage," Jeffreys v. City of New York, 426 F.3d 549, 554 (2d Cir. 2005), the Supreme Court has instructed that "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  Scott v. Harris, 550 U.S. 372, 380 (2007).  Therefore, district courts may make credibility assessments at the summary judgment stage "where the plaintiff relies almost exclusively on his own testimony, much of which is contradictory and incomplete, [because] it will be impossible for a district court to determine whether the jury could reasonably find for the plaintiff, and thus whether there are any 'genuine' issues of material fact, without making some assessment of the plaintiff's account."  Jeffreys v. City of New York, 426 F.3d at 554 (internal citation omitted).

II.     Excessive Force Claim

"The Fourth Amendment prohibits the use of unreasonable and therefore excessive force by a police officer." Tracy v. Freshwater, 623 F.3d 90, 96 (2d Cir. 2010).  The touchstone of the excessive force analysis is whether the force used by a police officer was "objectively unreasonable 'in light of the facts and circumstances confronting them, without regard to [the officers'] underlying intent or motivation.'" Jones v. Parmley, 465 F.3d 46, 61 (2d Cir. 2006) (quoting Graham v. Connor, 490 U.S. 386, 397 (1989)).  The analysis looks to the totality of the circumstances, "including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Graham v. Connor, 490 U.S. at 396.  Also relevant is whether officers "continued to use force against a suspect who, although previously resistant, has been subdued." Whitfield v. City of Newburgh, 2015 WL 9275695, at *18 (S.D.N.Y. Dec. 17, 2015).[7]

The "force used by the officer must be reasonably related to the nature of the resistance and the force used, threatened, or reasonably perceived to be threatened, against the officer." Sullivan v. Gagnier, 225 F.3d 161, 166 (2d Cir. 2000).  "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Graham v. Connor, 490 U.S. at 396.

Because police officers often must use some degree of force when arresting or otherwise lawfully "seizing" an individual, the Supreme Court has recognized that "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the

---

[7]     Plaintiff will be provided with copies of all unpublished opinions cited in this decision. See Lebron v. Sanders, 557 F.3d 76, 79 (2d Cir. 2009).

Fourth Amendment." <u>Graham v. Connor</u>, 490 U.S. at 396 (internal citation omitted). Thus, a plaintiff generally must prove he sustained some injury to prevail on an excessive force claim. <u>McAllister v. N.Y.C. Police Dep't</u>, 49 F. Supp. 2d 688, 699 (S.D.N.Y. 1999); see <u>Landy v. Irizarry</u>, 884 F. Supp. 788, 799 n.14 (S.D.N.Y. 1995) ("An arrestee must prove some injury, even if insignificant, to prevail in an excessive force claim.").

 A. <u>County Defendants' Involvement in Plaintiff's Arrest</u>[8]

 County Defendants argue they are entitled to summary judgment for plaintiff's claim of excessive force arising from his arrest because they were not personally involved insofar as they did not kick or personally harm plaintiff.

 The Court disagrees.

 A reasonable juror could conclude County Defendants were personally involved in the use of excessive force during plaintiff's arrest by failing to intervene.

 "It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." <u>Wright v. Smith</u>, 21 F.3d 496, 501 (2d Cir. 1994) (internal quotation omitted). "To survive a motion for summary judgment, there must be some evidence of the personal involvement of each defendant

---

[8] County Defendants and Newburgh Defendants submitted statements of undisputed facts pursuant to Local Rule 56.1, but plaintiff submitted a counterstatement of facts only in response to Newburgh Defendants' submission. County Defendants argue the Court should deem admitted the facts contained in their Rule 56.1 Statement. However, the Court recognizes "the various procedural rules attendant to opposing summary judgment may be challenging or confusing for a <u>pro se</u> litigant." <u>Cayemittes v. City of New York Dep't of Hous. Pres. & Dev.</u>, 974 F. Supp. 2d 240, 243 (S.D.N.Y. 2013), <u>aff'd</u>, 2016 WL 860063 (2d Cir. Mar. 7, 2016). Therefore, the Court will "in its discretion opt to conduct an assiduous review of the record." <u>Alexander v. The Bd. of Educ. of City of New York</u>, 2016 WL 2610009, at *2 (2d Cir. May 6, 2016) (summary order).

in the alleged constitutional deprivation." <u>Ricks v. O'Hanlon</u>, 2010 WL 245550, at *4 (S.D.N.Y.

Jan. 19, 2010) (citing <u>Williams v. Smith</u>, 781 F.2d 319, 323 (2d Cir. 1986)).

"A police officer is personally involved in the use of excessive force if he either: (1)

directly participates in an assault; or (2) was present during the assault, yet failed to intercede on

behalf of the victim even though he had a reasonable opportunity to do so." <u>Jeffreys v. Rossi</u>,

275 F. Supp. 2d 463, 474 (S.D.N.Y. 2003), <u>aff'd sub nom.</u> <u>Jeffreys v. City of New York</u>, 426

F.3d 549 (2d Cir. 2005).  At the summary judgment stage, "[a] plaintiff need not establish who,

among a group of officers, directly participated in the attack and who failed to intervene." <u>Id.</u> at

474.  "This is especially true where the acts complained of by the plaintiff, if true . . . are likely

to have prevented plaintiff from identifying which . . . defendant officers specifically engaged in

the bad acts." <u>Shankle v. Andreone</u>, 2009 WL 3111761, at *5 (E.D.N.Y. Sept. 25, 2009)

(internal citation omitted).  A plaintiff need only show there was "a realistic opportunity to

intervene to prevent the harm from occurring." <u>Anderson v. Branen</u>, 17 F.3d 552, 557 (2d Cir.

1994).

"[T]he question whether a defendant had a realistic chance to intercede will turn on such

factors as the number of officers present, their relative placement, the environment in which they

acted, the nature of the assault, and a dozen other considerations." <u>Figueroa v. Mazza</u>, 2016 WL

3126772, at *13 (2d Cir. June 3, 2016).  Because no single factor is dispositive, "[t]he essential

inquiry is whether, under the circumstances actually presented, an officer's failure to intervene

permits a reasonable conclusion that he became a 'tacit collaborator' in the unlawful conduct of

another." <u>Id.</u>  "Whether an officer had sufficient time to intercede or was capable of preventing

the harm being caused by another officer is an issue of fact for the jury unless, considering all the

14

evidence, a reasonable jury could not possibly conclude otherwise." Anderson v. Branen, 17 F.3d at 557.

Here, plaintiff contends he was on the ground on his chest and is unable to identify which officers kicked him in his ribs and legs while County Defendants were present.[9] Even assuming County Defendants did not kick plaintiff, a reasonable jury could credit plaintiff's account that he was kicked after he was on the ground and compliant, and therefore conclude County Defendants failed to intervene in other defendants' use of excessive force.

Accordingly, County Defendants' motion for summary judgment on plaintiff's excessive force claim with respect to plaintiff's arrest is denied.[10]

B.    Officer Scuadroni's Use of Force While Un-Handcuffing Plaintiff

Summary judgment is not appropriate as to Officer Scuadroni because there are issues of material fact as to whether, as plaintiff claims, Officer Scuadroni bent plaintiff's arm and grabbed plaintiff's throat during, or immediately following, his removal of plaintiff's handcuffs.

Although the video evidence casts significant doubt on plaintiff's version of the events in the strip search room, a reasonable juror could credit plaintiff's account that Officer Scuadroni twisted his arm and grabbed his throat, unprovoked. Summary judgment is inappropriate when "an excessive force claim turns on which of two conflicting stories best captures what happened," Whitfield v. City of Newburgh, 2015 WL 9275695, at *18 (S.D.N.Y. Dec. 17, 2015)

---

[9]    County Defendants do not argue that any kicking occurred too quickly for them to intervene. Even if they had made such an argument, viewing the facts favorably to plaintiff, the Court would not be able conclude that this "assault occurred so quickly that defendant officers lacked time to intercede as a matter of law." Figueroa v. Mazza, 2016 WL 3126772, at *10 (denying summary judgment on personal involvement grounds when defendant officers were present for an alleged assault of an arrestee that lasted approximately twenty seconds).

[10]    As noted above, Newburgh Defendants do not seek summary judgment as it relates to the arrest itself.

(quoting <u>Saucier v. Katz</u>, 533 U.S. 194, 216 (2001) (Ginsburg, J., concurring)), and "video evidence is ambiguous as to how much force, if any, the officers used." <u>Hicks v. Vill. of Ossining</u>, 2016 WL 345582, at *5 (S.D.N.Y. Jan. 27, 2016) (denying summary judgment for defendant officers when surveillance video did not clearly capture the amount of force used to apprehend plaintiff). Here, surveillance video shows that Officer Scuadroni's legs and back were relatively stationary when he removed plaintiff's handcuffs, consistent with Officer Scuadroni's account that he was did not twist plaintiff's arm or grab plaintiff's throat. (Ex. E, Booking 1 & Booking 2, at 6:38:49-6:38:59). However, Officer Scuadroni's arms are not visible during the four seconds just before plaintiff turns to strike Officer Scuadroni. (<u>Id</u>. at 6:38:59-6:39:03). Viewing the record in the light most favorable to plaintiff, as the Court must at the summary judgment stage, a jury could credit plaintiff's account that Officer Scuadroni – unprovoked by any of plaintiff's actions – twisted plaintiff's arm and grabbed his throat while removing the handcuffs.

Therefore, Newburgh Defendants' motion for summary judgment on plaintiff's excessive force claim is denied as to Officer Scuadroni.

C.    <u>The Melee While Plaintiff was Unrestrained</u>

After Officer Scuadroni removed plaintiff's handcuffs, it is uncontroverted that plaintiff struck Officer Scuadroni[11] and a melee ensued for approximately thirty seconds.

---

[11]    Although plaintiff denies striking Officer Scuadroni in the head, he is estopped from doing so. "Collateral estoppel operates only to prevent [plaintiff] from asserting facts that were <u>necessarily</u> <u>decided</u> in his previous trial." <u>Hemphill v. Schott</u>, 141 F.3d 412, 417 (2d Cir. 1998). Plaintiff was charged with second degree assault in violation of New York Penal Law § 120.08 for striking Officer Scuadroni in the head. A jury found plaintiff guilty, necessarily deciding that plaintiff struck Officer Scuadroni in the head. Under New York law, "unless and until the state court judgments are reversed" on appeal, "they continue to constitute final and binding adjudications." <u>Antonious v. Muhammad</u>, 873 F. Supp. 817, 824 (S.D.N.Y. 1995), <u>aff'd</u>, 8 F.

16

During the fracas, County Defendants, Officer Mendez, and Officer Hinspeter each used force that appears to have been reasonable in light of plaintiff's efforts to fight the officers and to resist their efforts to restrain him.  See Graham v. Connor, 490 U.S. at 396 (the reasonableness of an officer's use of force depends in part on whether the suspect poses an immediate threat to the safety of the officers and whether he is actively resisting arrest); Tracy v. Freshwater, 623 F.3d at 97 (holding a law enforcement officer's use of force was reasonable when he struck plaintiff with his flashlight after plaintiff "made a quick and sudden movement as [the officer] attempted to effect an arrest").  County Defendants, Officer Mendez, and Officer Hinspeter attempted to restrain plaintiff[12] while he was physically fighting with or resisting the defendant police officers.  Defendants argue "[e]ach had every right to take reasonable measures, including the use of force, to end the threat to their safety."  (Newburgh Defs.' Br. at 5).

Although it appears these defendants' use of force was reasonable while plaintiff was fighting and resisting the officers' efforts to restrain him, the Court declines to grant summary judgment and conclude as a matter of law that their use of force was reasonable during this thirty second period of time.  As discussed below, issues of material fact preclude summary judgment for each of these four defendants' use of force while plaintiff was no longer fighting or resisting.  Thus, there would be little benefit of finding these four defendants' use of force – for an approximately thirty-second period of time – reasonable as a matter of law, given that the Court must defer to the province of the jury as to other aspects of plaintiff's excessive force claim.

---

App'x 78 (2d Cir. 2001).  Therefore plaintiff is estopped from denying he struck Officer Scuadroni.

[12]    Deputy Volpe punched plaintiff after plaintiff assumed a fighting stance and reached towards him.  Officer Mendez entered the strip search room and attempted to knee plaintiff against the wall.  Officer Hinspeter sprayed plaintiff with pepper spray.  Deputy Kirby and Officer Mendez stepped on plaintiff's wrists.

D.     Subduing Plaintiff

Defendants argue summary judgment should be granted in favor of Deputy Volpe and

Officers Mendez, Hinspeter, and Arrestin with respect to their efforts to subdue plaintiff outside

the strip search room because their actions were objectively reasonable.

Although it is a close call, the court disagrees.

When officers continue to apply force to an arrestee who is already subdued, it may be

sufficient for a jury to find such force to be excessive.  See, e.g., Alhovsky v. Ryan, 658 F. Supp.

2d 526, 538 (S.D.N.Y. 2009), aff'd sub nom. Alhovsky v. Paul, 406 F. App'x 535 (2d Cir. 2011)

(denying summary judgment for defendant officers when they slammed an arrestee's head into a

glass window after he had been handcuffed).  Specifically, the use of a taser on a suspect who

has already been subdued is some indication of excessive force.  See Garcia v. Dutchess Cty., 43

F. Supp. 3d 281, 293 (S.D.N.Y. 2014), aff'd in part, dismissed in part sub nom. Garcia v.

Sistarenik, 603 F. App'x 61 (2d Cir. 2015) (denying summary judgment when an officer tased an

arrestee twice after officers stood on top of the arrestee and pulled his arms behind his back to

handcuff him).  Therefore, the reasonableness of force used by (i) Officer Arrestin when he tased

plaintiff, (ii) Deputy Volpe and Officer Mendez when they grabbed plaintiff's arms to reapply

his handcuffs, and (iii) Officer Hinspeter when he placed his knee on plaintiff's neck and upper

back, depends in part on exactly when plaintiff was subdued and no longer a threat to the

officers' safety.

Based on the video and other evidence, the Court is simply not able to say as a matter of

law precisely when plaintiff was restrained to the point that he no longer posed a threat to the

officers' safety.  On the one hand, Newburgh Defendants argue "[u]nless and until [plaintiff] was

fully restrained in cuffs he posed a threat."  (Newburgh Defs.' Br. at 12).  However, Deputy

Kirby and Officer Mendez stepped on plaintiff's wrists as he lay face-down on the ground, and

18

then Officer Arrestin deployed his taser.  Even though plaintiff was physically fighting officers just moments before, a jury could reasonably conclude plaintiff was subdued prior to being tased, grabbed, or kneed.

Of course, the jury is not compelled to find plaintiff was already subdued prior to being tased, grabbed, or kneed.  These are issues that remain in dispute.  A jury may conclude plaintiff was subdued only after he was tased, or, as defendants contend, only after Volpe, Hinspeter, and Mendez reapplied plaintiff's handcuffs.  But if plaintiff was no longer resisting, and if defendants gratuitously tased, grabbed, or kneed plaintiff, causing injuries, a reasonable jury could find the force used was excessive.[13]

E.      After Plaintiff was Subdued

Because material facts are disputed and the record is inconclusive regarding the events that transpired in the strip search room after plaintiff was placed there in shackles, summary judgment is denied as to plaintiff's excessive force claim arising from this period of time.

Plaintiff contends Officer Arrestin stomped on his head and throat, and Sergeant Anderson stomped on his shackled ankles and kicked him in his back.  Plaintiff also states Officer William Lahar yanked the taser prongs from his back.

---

[13]      Even assuming the Court could conclude as a matter of law the exact moment plaintiff was subdued, whether plaintiff was still resisting officers' commands is not necessarily dispositive of whether the force used against him was unconstitutionally excessive.  A law enforcement officer's use of force may be unreasonable, even if the arrestee is not yet subdued, if the officer "uses overwhelming and disproportionate force in subduing" the arrestee.  McCrory v. Belden, 2003 WL 22271192, at *4 (S.D.N.Y. Sept. 30, 2003).  The surveillance video does not conclusively convey the degree of force Deputy Volpe, Officer Mendez, and Officer Hinspeter used as they reapplied plaintiff's handcuffs.  When plaintiff arrived at the hospital, he complained of pain in his left wrist, and the medical report reflects swelling of plaintiff's wrist at the handcuff site.  Thus, regardless of exactly when plaintiff was subdued, a reasonable jury could find the force with which these officers handcuffed plaintiff constituted excessive force.

Defendants argue plaintiff's medical records reflect only minor injuries and do not support his claims of being assaulted while shackled in the strip search room.  Defendants are correct that a mere de minimis injury is evidence that de minimis force was used.  See, e.g., Caravalho v. City of New York, 2016 WL 1274575, at *12 (S.D.N.Y. Mar. 31, 2016) (holding the force used in applying flex cuffs to be a reasonable as a matter of law because the numbness and tingling plaintiff experienced were de minimis).  However, the absence of long-term injury is not dispositive of an excessive force claim.  See Franks v. New Rochelle Police Dep't, 2015 WL 4922906, at *14 (internal quotation omitted) (collecting cases and concluding, despite the plaintiff's lack of major injury, that the reasonableness of the defendant officers' use of force should be left to the jury).  "[T]o focus on the severity of an arrestee's injury as opposed to the reasonableness of an officer's use of force is to focus on the wrong question."  Id.

To the extent defendants invite the Court to discredit plaintiff's version of events based on the minor injuries reflected in his medical records, the Court declines to do so.  Although plaintiff's medical records do appear incongruous with his version of events, plaintiff's account is not "blatantly contradicted" by the video and documentary evidence such that the Court should discredit plaintiff's account at this stage as a matter of law.  Cf. Scott v. Harris, 550 U.S. at 380. In short, it is the province of the jury to weigh credibility.

Accordingly, summary judgment is denied with respect to plaintiff's excessive force claim after he was subdued and back in the strip search room.[14]

---

[14]     Newburgh Defendants argue there is no evidence Officer Kevin Lahar, Officer William Lahar, and Officer Ladlee personally used force against plaintiff during the altercation in the booking room.  (Newburgh Defs.' Reply at 5-6).  This argument may well have merit.  However, these defendants' were present during their colleagues' use of force and would have had an opportunity to intervene if their colleagues' use of force was excessive.  See supra Discussion Section II.A (discussing failure to intervene theory of personal involvement as to the County Defendants during plaintiff's arrest).  Because issues of material fact preclude summary

III.   Qualified Immunity

The Court must next address whether defendants' actions are protected by qualified immunity.  Qualified immunity shields government officials whose conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  The scope of qualified immunity is broad, and it protects "all but the plainly incompetent or those who knowingly violate the law."  Malley v. Briggs, 475 U.S. 335, 341 (1986).  A qualified immunity defense is established where "(a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law."  Tierney v. Davidson, 133 F.3d 189, 196 (2d Cir. 1998).

The doctrine of qualified immunity recognizes that "reasonable mistakes can be made as to the legal constraints on particular police conduct."  Saucier v. Katz, 533 U.S. 194, 205 (2001).  Qualified immunity applies if the officer's mistake as to what the law requires is reasonable.  Id. It does not apply if, on an objective basis, it is obvious that no reasonably competent officer would have taken the actions of the alleged violation.  Malley v. Briggs, 475 U.S. at 341.

Defendants argue the force they used was objectively reasonable as a matter of law. Defendants are incorrect.

Issues of fact exist as to whether (i) County Defendants had an opportunity to intervene while plaintiff contends he was being kicked during his arrest; (ii) Officer Scuadroni grabbed plaintiff's throat and bent his arm while un-handcuffing him; and (iii) whether the defendants' use of force was excessive after plaintiff was re-restrained.  Were a jury to credit plaintiff's

---

judgment as to plaintiff's excessive force claim, summary judgment is also denied as to Officer Kevin Lahar's, Officer William Lahar's, and Officer Ladlee's failure to intervene.

account, it could reasonably conclude defendants violated plaintiff's Fourth Amendment right to be free from excessive force, and it was not objectively reasonable for defendants to have done so.

Accordingly, summary judgment on the issue of qualified immunity is not appropriate.

IV.   Procedural Due Process Claim

To prevail on a procedural due process claim, a plaintiff must show he possessed a protected liberty or property interest and was deprived of that interest without due process. McMenemy v. City of Rochester, 241 F.3d 279, 285-86 (2d Cir. 2001).  The Due Process Clause protects "the right not to be deprived of liberty as a result of the fabrication of evidence by a government officer acting in an investigating capacity."  Zahrey v. Coffey, 221 F.3d 342, 349 (2d Cir. 2000); see Ricciuti v. N.Y.C. Transit Auth., 124 F.3d 123, 130 (2d Cir. 1997) ("No arrest, no matter how lawful or objectively reasonable, gives an arresting officer or his fellow officers license to deliberately manufacture false evidence against an arrestee.").

The Supreme Court has held, "in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus."  Heck v. Humphrey, 512 U.S. 477, 486-87 (1994).  If a Section 1983 claim "would 'necessarily imply the invalidity of the punishment imposed,' . . . the claim [is] 'not cognizable under [Section] 1983.'"  Jackson v. Johnson, 15 F. Supp. 2d 341, 348 (S.D.N.Y. 1998) (quoting Edwards v. Balisok, 520 U.S. 641, 648 (1997)).

Plaintiff contends he was deprived of a full and fair opportunity to litigate his criminal conviction in violation of his Fourteenth Amendment Due Process rights because a suppression hearing was held on December 11, 2013, but "was never ruled on."  (Zachary Aff. ¶¶ 14-15).  Defendants argue summary judgment must be granted in light of plaintiff's criminal conviction.

Defendants are correct.

Plaintiff's due process claim necessarily challenges the validity of his criminal conviction.  A plaintiff is barred from bringing such a claim in civil court if his conviction has not been invalidated.  See Barnes v. City of New York, 2015 WL 5052508, at *6 (S.D.N.Y. Aug. 26, 2015) (granting summary judgment on plaintiff's claims brought after his conviction premised on the allegation that defendant officers fabricated evidence); see also Edwards v. Balisok, 520 U.S. at 644-45 (holding plaintiff's due process claim under Section 1983 was not cognizable, as his allegation that the hearing officer at his prison disciplinary proceeding "'intentionally denied' him the right to present evidence in his defense" would have necessarily invalidated the results of his hearing).

Here, an appeal of plaintiff's conviction is pending in the Appellate Division, Second Department.  As long as plaintiff's case has not been "reversed on direct appeal" or otherwise invalidated, Heck v. Humphrey, 512 U.S. at 487, plaintiff's procedural due process claim is not cognizable under Section 1983.  As such, summary judgment for defendants is granted as to plaintiff's due process claim.

**CONCLUSION**

Defendants' motions for summary judgment are DENIED as to plaintiff's excessive force claim and GRANTED as to plaintiff's procedural due process claim.

Counsel for all parties, as well as plaintiff, are directed to attend a case management conference on August 22, 2016, at 2:30 p.m.  Defense counsel shall arrange for plaintiff's appearance by telephone.

The Clerk is instructed to terminate the motions.  (Docs. ##156, 171).

Dated: July 25, 2016
       White Plains, NY

SO ORDERED:

Vincent L. Briccetti
United States District Judge